UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID IVERSON
    Plaintiff,

    v.

LIEUTENANT R. REESE, CAPTAIN POWELL,

CORRECTIONS OFFICER D. MILLER,

CORRECTIONS OFFICER A. CRAWFORD,

CORRECTIONS OFFICER A. CHAPMAN and

LIEUTENANT POSTUPACK,
    Defendants.

CIVIL ACTION No. 4 : 20-cv-1269

Magistrate Judge, W.I. ARBUCKLE

JURY TRIAL DEMANDED

FILED
SCRANTON

APR 22 2021

PER _____
DEPUTY CLERK

## AMENDED COMPLAINT

AND NOW, comes plaintiff, David Iverson, by and as (pro se) counsel, filing his first Amended Complaint in civil action, and avering the following in support thereof:

### A. Jurisdiction & Venue

1. This Court has jurisdiction to hear plaintiff's claims of violation of Federal constitutional rights under 42 U.S.C. Section 1331 and 1334 (2) (3) and (4). This court has supplemental jurisdiction over plaintiff's state law (tort) claims under 28 U.S.C. Section 1367.

2. Venue is proper in this district fore, the events or omissions giving rise to the claims occurred within the territorial jurisdiction of this district and the defendants are subject to personal jurisdiction within this district.

## B. Parties

3. Plaintiff, David Iverson is an adult (male) individual incarcerated in the Pennsylvania Department of Correction (D.O.C.) and has been assigned inmate # Ge-2064. At the time of events described in this complaint, Mr. Iverson was being housed at SCI@Mahanoy, 301 Morea Rd., Frackville Pa. 17932. However, plaintiff is currently being housed at SCI@Benner Township, 301 Institution Drive, Bellefonte, Pa 16823.

4. Defendant, Corrections Officer, Lieutenant Ryan Reese is an adult (male) individual with a place of business at SCI@Mahanoy, 301 Morea Rd., Frackville Pa. 17932. At all times pertinent to this complaint, Defendant Reese served as the Lieutenant-in-charge of the Secure Level-5 Housing Unit and/or all Level-5 housed inmates being housed in the Psychiatric Observation Cells (P.O.C.), in SCI-Mahanoy's Medical Department. He is being sued in his official and individual capacity.

5. Defendant, Corrections Officer, Captain Powell is an adult (male) individual with a place of business at SCI@Mahanoy, 301 Morea Rd., Frackville Pa. 17932. At all times pertinent this complaint, defendant Powell served as the shift Commander for the first shift at SCI-Mahanoy. This defendant was the commanding Captain during the events described in this complaint that occurred on May 24, 2019, and in charge of the authorization of any usage of force on his shift. He is being sued in his individual capacity.

6. Defendant Corrections Officer Daniel Miller is an adult (male) individual with a place of business at SCI@Mahanoy, 301 Morea Rd., Frackville Pa. 17932. At all times pertinent to this complaint, defendant Miller served as a corrections officer, posted in the Medical Department, supervising the secure Level-5 housed inmates in the psychiatric observation cells, on the first shift at Mahanoy. He is being sued in his individual capacity.

7. Defendant Adam Crawford is a adult (male) individual with a place of business at SCI@Mahanoy, 301 Morea Rd., Frackville Pa. 17932. At all times pertinent to this complaint, defendant Crawford served as an officer assigned to the Level-5 Housing Unit and it's inmates. Defendant Crawford was also an officer personally assigned by the lieutenant-in-charge (Defendant Reese) to enter the plaintiff's cell on 5-24-2019, as set forth in the events described in this complaint. He is being sued in his individual capacity.

8. Defendant Adam Chapman is an adult (male) individual with a place of business at SCI@Mahanoy, 301 Morea Rd., Frackville Pa. 17932. At all times pertinent to this complaint, defendant Chapman served as an officer assigned to the Level-5 Housing Unit and it's inmates. Defendant Chapman was also an officer personally assigned by the lieutenant-in-charge (Defendant Reese) to enter the plaintiff's cell on 5-24-2019, as set forth in the events described in this complaint. He is being sued in his individual capacity.

9. Defendant Postupack is an adult (Female) individual with a place of business at SCI@Mahanoy, 301 Morea Rd., Frackville Pa. 17932. At all times pertinent to this complaint, defendant Lt. Postupack served as an additional high ranking officer present and/or involved with the events described herein. She is being sued in her individual capacity.

## D. Facts

10. On May 24, 2019, Plaintiff, Mr. Iverson was housed at the State Correctional Institution @ Mahanoy (SCI@Mahanoy) in Psychiatric Observation Cell-9 (P.O.C.9), as a level-5 Housing inmate.

11. This Morning, (5-24-19), Mr. Iverson was laying on his mattress, that was layed out on the cell floor (half asleep) when his cell door was opened without warning.

12. The plaintiff Mr. Iverson immediately was awaken to see approximately 4-5 officers entering his cell, including defendants, Reese, who was the Lieutenant-in-charge, Miller, Crawford, Chapman and Lt. Postupack (an additional high ranking "female" officer) who stood at the cell door watching Defendants Lt. Reese and the three Low ranking officers violate D.O.C policy.

13. A secure level-5 housing inmate is either under Disciplinary and/or administrative custody, who's cell door should never be opened without the inmate first being secured, via, restraints, as required by D.O.C policy.

14. Before opening Mr. Iverson's cell door, defendant Reese (The Lieutenant-in-charge) gave the plaintiff no oppertunity (thru verbal order) to comply with any plans they had to secure the plaintiff in restraints to perform whatever duty that was required, and/before entering Mr. Iverson's cell, there were no verbal notifications and/or warnings for why force was going to be used against him, as both required by policy.

15. Durring the planned entrance of the plaintiff's cell, the defendants also failed to bring a handheld video/audio camera with them as required by D.O.C. policy.

16. Do to pass issues with Defendant Reese, his failure to notify the plaintiff on why he was entering plaintiff's cell with a team of officers, his failure to allow the plaintiff to comply with any orders to be handcuffed, and his failure to bring a required hand held video/audio camera, the plaintiff knew that the defendants would be up to no good.

17. When Defendant Lt. Reese (who was the Lieutenant-in-charge) entered the plaintiff's cell with his team of officers, the plaintiff Mr. Iverson laying on his mattress, on his stomach and not doing anything physically dangerous to himself or others. Dispite this, Mr. Iverson was physically attacted by Defendants Lt. Reese, C.O.1 D. Miller, C.O.1 A. Crawford and C.O.1 A. Chapman.

18. All uses of force is authorized by the shift commander of the said shift (Defendant Powell), including, the opening of a level-5 inmate's cell door without first securing the inmate with restraints, and the use of the restraint chair.

19. The planned use of force against the plaintiff included the defendants first stripping Mr. Iverson naked of his smock in front of the female defendant (Lt. Postupack), then piling on top of Mr. Iverson's back, head, and legs.

20. As the plaintiff was held down on his stomach in said fashion, the plaintiff was forced to take Defendant's knee to his head and face several times.

21. While on top of the plaintiff, Defendants Reese, Crawford, Chapman and Miller excessively pulled the plaintiff's arms back till it felt as if his shoulder was dislocated.

22. While on the plaintiff's back, one of the defendants had his Knee planted between the plaintiff's legs (from behind), directly on top of Mr. Iverson's scrotum, crushing the left testicle of the plaintiff under the defendants wieght, causing the plaintiff to scream out in pain.

23. As the plaintiff screamed out in pain, some kind of an object penetrated the plaintiff's anal cavity as he struggled in pain under the combined force of the defendants.

24. Plaintiff then screamed out that he was being sexually assaulted when he could the hear the defendants laughing, including Lt. Postupack, who, as a high ranking officer herself, had a duty to enforce policy of the D.O.C., and to act and intervene in the face of the wrong doing of low ranking officers.

25. Upon totally subduing and/or immobilizing Mr. Iverson and assaulting him physically and sexually, the defendants handcuffed the plaintiff, picked him up off the mattress and first sat him down on the bed frame naked infront of the female defendant before finally covering his privates.

26. The Lieutenate-in-charge (Defendant Reese) then ordered the officers/ defendants to bring a restraint chair into the cell, where they then placed the plaintiff (Mr. Iverson) into the chair.

27. The Department of Corrections policy 6.3.1 "Restraint Chair" Policy was not followed when the defendants place Mr. Iverson in the chair, the restraints were not checked for circulation by medical staff, and Defendant Reese failed to read the plaintiff the "Notice for Use of Restraint Chair" before or after Mr. Iverson's placement into the restraint chair, as all required by policy.

28. The restraint chair straps on the plaintiffs' wrist and waist were pulled so tight that half of the plaintiff's body was in unbearable pain and the other half went numb.

29. Do to plaintiff's reported physical and/or sexual assault, plaintiff Mr. Iverson was later sent out to Reading Hospital, where he was given a rape-Kit, medical attention for his shoulder, and was diagnosed with having a Large hydrocele (a sac of fluid that forms around a testical) on his left testical, do to the trama caused by the defendant's Knee being planted on Mr. Iverson's scrotum, as described in paragraph 22. See Exhibit-1 at pages 1 and 4 of 6 for Reading Hospital's "After Visit Summary" of Mr. Iverson, for details of plaintiff's scrotum injury/diagnosis of Hydrocele on May 24, 2019.

30. the injury to Mr. Iverson testicle was caused on May 24, 2019, however, to this current day (In 2021) the testicle has increased in abnormal size, and pain, and as set forth by a recent ultrasound, has begun to spread to the right testicle.

31. The Department of Corrections refuse to have the painful hydrocele removed from the plaintiff because they claim for it to be a cosmetic procedure, and is not a serious medical need. However, it is clear that the hydrocele surgery decribed on page 4-5 in exhibit-1 is needed A.S.A.P.

32. At all times described in this complaint and to this current day, the plaintiff Mr. Iverson have been on the Department of Corrections mental health roster as a "stibility code-D," which means that he is dianosed by the Mental Health Department to be "seriously mentally ill."

33. As a direct result of the defendants deliberate abuse, the plaintiff have been made to endure additional emotional pain, suffering, and humiliation.

34. The plaintiff have had nightmares and is in fear of corrections officers, the smallest of noises awakens Mr. Iverson from his sleep, fearing that officers is opening his cell door to physically and/or sexually assault him.

35. The plaintiff exausted all administrative remidies, via, his grievance/complaint filed under the Prisoner's Rape Elimination Act.

## E. Claims For Relief

### Count I - Excessive Force
### David Iverson
v.
### Lt. Reese, C.O.1.D.Miller, C.O.1.A.Crawford and C.O.1.A.Chapman.

36. The foregoing averments of this complaint are incorporated herein by reference as though set forth in full.

37. The conduct of the above defendants constituted the unnecessary and wanton infliction of pain which constitutes cruel and unusual punishment.

38. The force applied by the named defendants as set forth above was applied maliciously and sadistically for the very purpose of causing harm.

39. The force applied by the named defendants as set forth above was not part of a good faith effort to maintain or restore discipline, and their failure to abide by their own established procedures or standings evinces their improper objective.

40. The above named defendants therefore used excessive force against Mr. Iverson and in doing so deprived Mr. Iverson of his right to be free from cruel & unusual punishment pursuant to the Eighth Amendment to the United States Constitution.

41. This deprivation of Mr. Iverson's constitutionally-protected rights is actional pursuant to 42 U.S.C. §1983.

42. As a result of the actional conduct of the named defendants set forth in this count, Mr. Iverson suffered damages including physical pain, disfigurement, discomfort, and other physical harm and fear, humiliation, mental anguish, and other emotional and mental harm.

43. The deprivation of Mr. Iverson's constitutionally-protected rights by each defendant as set forth in this Count was malicious, wanton, and reckless and evidenced a callous disregard for Mr. Iverson's rights and was motivated by ill will or spite toward Mr. Iverson.

WHEREFORE, Plaintiff David Iverson request that this Honorable Court enter judgment in favor of the plaintiff and against the defendants jointly and severally for compensatory damages (including injunctive relief against defendant Reese, to have the hydrocele surgery done on the plaintiff as described in exhibit-1 at page 4 of 6), punitive damages along with interest against each defendant, cost of this suit, and any other relief as this Honorable Court may deem just.

Count II-Battery including Sexual
David Iverson
v.
Lt. Reese, C.O.1. D. Miller, C.O.1. A. Crawford, and C.O.1. A. Chapman

44. The foregoing averments of this complaint are incorporated herein by reference as though set forth in full.

45. The above named defendants actions demonstrates an intent to cause harmful or offensive bodily contact to the plaintiff Mr. Iverson.

46. Under the circumstance where the plaintiff was never given a (policy required) oppertunity thru direct orders to comply with first being handcuffed before force was used, the blows taken by the plaintiff to his head and face, the injury to plaintiff's testicle, the breach of plaintiff anal cavity, and the defendants councolated failure to bring a policy required

handheld video/audio camera to record their used force, the use of force by the defendants named in this count is considered so excessive as to cause harmful or offensive bodily contact with the plaintiff.

47. As a direct result of the actionable conduct of the named defendants set forth in this count, Mr. Iverson suffered damages including physical pain, disfigurment, discomfort, and other physical harm and fear, humiliation, mental anguish, and other emotional and mental harm.

48. Each of the above named defendants are jointly and severaly liable as co-conspirators and also due to the indivisible nature of injuries they inflicted upon plaintiff through concertrated action.

WHEREFORE, Plaintiff David Iverson request that this Honorable Court enter judgment in his favor and against the defendants jointly and severally for compensatory damages, punitive damages along with interest, cost of this suit, and such other relief as this Honorable Court may deem just.

Count III - Cruel & Unusual Punishment (Eighth Amendment)
David Iverson
v.
Lt. Reese, C.O.1.D.Miller, C.O.1.A.Crawford and C.O.1.A.Chapman

49. The foregoing averments of this complaint are incorporated herein by reference as though set forth in full.

50. The conduct of the above named defendants durring plaintiff's restraint chair placement constituted the unnecessary and wanton infliction of pain which constitutes cruel & unusual punishment.

51. The force applied by the named defendants durring their misuse of the restraint chair as set forth in pp. 26-28 was applied maliciously and sadistically for the very purpose of causing harm.

52. The force applied by the named defendants as set forth in pp. 26-28 was not part of a good faith effort to maintain or restore discipline, and their failures to abide by their own established 6.3.1. Restraint Chair procedures and standings envinces their improper objective.

53. The above named defendants therefore used excessive force against Mr. Iverson and in doing so deprived him of his right to be free from cruel & unusual punishment pursuant to the Eighth Amendment to the United States Constitution.

54. This deprivation of Mr. Iverson's constitutionally protected rights is actionable pursuant to 42 U.S.C. § 1983.


WHEREFORE, Plaintiff, David Iverson request that this Honorable Court enter judgment in his favor and against the defendants jointly and severally for compensatory damages, punitive damages along with interest, cost of this suit, and such other relief as this Honorable Court may deem just.

[Continue On Next Page.]

12 of 18

## Count IV - Failure To Intervene (Eighth Amendment)

### David Iverson

### v.

### Lt. Postopack

55. The foregoing averments of this complaint are incorporated here by reference as though set forth in full.

56. Defendant Postopack witnessed and had a reasonable opportunity to intervene at the time of the assault of Mr. Iverson set forth in the instant complaint.

57. Defendant Postopack failed and refused to so intervene, and even laughed out loud during the plaintiff's assault, as set forth at pp. 26.

58. In so doing, Defendant Postopack deprived Mr. Iverson of his right to be free from cruel and unusual punishment pursuant to the Eighth Amendment to the United States Constitution

59. This deprivation of Mr. Iverson's constitutionally-protected rights is actionable pursuant to 42 U.S.C. §1983.

60. As a result of the actionable conduct of this defendant as set forth in this count, Mr. Iverson suffered damages including physical pain, disfigurement, discomfort, and other physical harm and fear, humiliation, mental anguish, and other emotional and mental harm.

61. The deprivation of Mr. Iverson's constitutionally-protected rights by this defendant as set forth in this count was malicious, wanton, and reckless and evidenced a callous disregard for Mr. Iverson's rights and was motivated by ill will or spite toward Mr. Iverson.

[Continue On Next Page]

WHEREFORE, Plaintiff, David Iverson request that this Honorable Court enter judgment in his favor and against Defendant Postopack jointly and severally for compensatory damages, punitive damages along with interest, cost of this suit, and such other relief as this Honorable Court may deem just.

## Count V - Deliberate Indifference (Eight Amendment)
## David Iverson
### v.
### Captain Powell (Before described as John Doe)

The foregoing averments of this complaint are incorporated here by reference as though set forth in full.

62. On May 24, 2019, the plaintiff Mr. Iverson was considered a secure Level-5 housing unit inmate at SCI-Mahanoy, housed in a psychiatric observation (P.O.C.) cell.

63. A secure Level-5 housing unit inmate is either under Disciplinary and/or Administrative custody, who's cell door should never be opened without first securing the inmate via restraints, including handcuffs, as required by D.O.C. policy.

64. Opening a level-5 housing inmate's cell door, without first securing him in restraints, is an obvious risk to both correctional staff and inmates.

65. There are policies in place to protect both correctional staff and inmates, for officers to give inmates the oppertunity, via approximately three orders to come to his cell door to be hand cuffed and for the inmate to comply without incident with any following orders by officials, before opening his cell door and using physical force against him.

66. Opening a level-5 inmate's cell door, without first securing him in restraints is considered a planned use of force, and is required by D.O.C. policy to be recorded, via, hand held video/audio camera, and authorized by the shift commander of that shift.

67. Any planned use of force, including the use of the restraint chain must be authorized by the shift commander of the said shift.

68. The Shift Commander, Defendant Captain John Doe, authorized defendants, Lt. Reese, C.O.1. Miller, C.O.1. J. Doe and C.O.1. J. Doe to open the plaintiff's cell door without first giving the plaintiff any warnings and/or justifications, and to use physical excessive force against him, and authorizing the named defendant's not to use a policy required video camera to record the use of force.

69. Defendant Capt. Doe put both the plaintiff Mr. Iverson's safety and his Corrections Officer's [Defendants] safety at risk by authorizing his fellow defendants to violate clear policies that was set in place to preserve both parties safety.

70. Defendant Captain Doe knew or should have known the risk of authorizing his fellow defendants to open a level-5 housing inmate's door with-out first giving the inmate oppertunity to comply without incident to be restrained, and further authorizing the defendants to use physical excessive force against the plaintiff without a required video camera present.

71. Defendant Capt. Doe knew or should have known the risk of authorizing the defendants to use a restraint chair on an inmate without following the required 6.3.1. Restraint Chair policy.

[Continue On Next Pg.]

72. Capt. J. Doe's clear disregard to an excessive risk to Mr. Iverson's health and safety constituted an unnecessary and wanton infliction of pain and injury.

73. Capt. Doe was, therefore, deliberately indifferent to the plaintiff's health and safety.

74. This deliberate Indifference deprived Mr. Iverson of his right to be free from cruel & unusual punishment pursuant to the Eighth Amendment to the United States Constitution.

75. This diprivation of Mr. Iverson's constitutionally-protected rights is actionable pursuant to 42 U.S.C. §1983.

76. As a result of the actionable conduct of Defendant Captain John Doe as set forth in this count, Mr. Iverson suffered damages including physical pain, disfigurement, discomfort, and other physical pain and/or harm and fear, humiliation, mental anguish, and other emotional and mental harm.

77. The deprivation of Mr. Iverson's constitutionally-protected rights by defendant Capt. J. Doe as set forth in this count was malicious, wanton, and reckless and evidenced a callous disregard for Mr. Iverson's rights and was motovated by ill will or spite toward Mr. Iverson.


WHEREFORE, Plaintiff David Iverson request that this Honorable Court enter judgment in his favor and against Defendant Capt. J. Doe along with interest, attorneys' fees, compensatory damages, punitive damages, and such other reliefs as this Honorable Court may deem just.


[Continue On Next Page]

Count VI - Conspiracy

David Iverson

V.

Lt. Reese, Cpt. Powell, C.O.1. D. Miller, C.O.1. A. Crawford, C.O.1. A. Chapman

[JOHN DOE'S CORRECTED]

The foregoing averments of this complaint are incorporated here by reference as though set forth in full.

78. On May 24, 2019, the plaintiff Mr. Iverson was considered a secure level-5 housing inmate at SCI-Mahanoy, housed in a psychiatric observation (P.O.C) cell.

79. A secure level-5 housing inmate is either under Disciplinary and/or Administrative custody, who's cell door should never be opened without the inmate first being secured via, restraints, including handcuffs as required by by D.O.C. policy.

80. With the autorization of Defendant Capt. John Doe, who was the first shift "shift commander" on 5-24-19, Defendants, Lt. Reese, C.O.1. Miller, C.O.1. J. Doe and C.O.1. J. Doe all agreed to participate as a team to being sent into Mr. Iverson's cell, without first allowing him to comply with being secured without incident, and without a hand held video/audio camera, as both are required by D.O.C. policy.

81. Upon information, belief, and authorization by Defendant Capt. Doe, the purpose of the defendants entering Mr. Iversons cell without allowing him to first comply with any verble orders to be handcuffed without incident(as required by policy to avoid physical force), and their failure to bring along a required video cam to record there use of force, **pronounces** their true objective, which was not a good faith effort to maintain safety or order in the prison, but, rather a malicious and sadistic attempt to inflict pain upon Mr. Iverson, off the record.

82. Upon information and belief, the defendants all agreed before entering Mr. Iverson's cell, that they would enter the plaintiff's cell without a camera, that the plaintiff would be restrained, and that the plaintiff Mr. Iverson would be physically and/or sexually assaulted.

83. Defendants Lt. Reese, C.O.1 Miller, Capt. J. Doe, C.O.1 J. Doe, and C.O.1 J. Doe therefore, conspired to use excessive force against Mr. Iverson in violation of his Eighth Amendment rights, and also Article 1 section 13 under Pa. Const.

84. The deprivation of Mr. Iverson's constitutionally-protected rights by each defendant as set forth in this count, was malicious, wanton and reckless and evidenced a callous disregard for Mr. Iverson's rights and was motivated by ill will or spite toward the plaintiff.

85. As a result of the actionable conduct of each defendant as set forth in this count, Plaintiff D. Iverson suffered damages including physical pain, disfigurement, discomfort, and other physical harm and fear, humiliation, mental anguish, and other emotional and mental harm.

WHEREFORE, Plaintiff David Iverson request that this Honorable Court enter judgment in his favor and against Defendants Lt. Reese, C.O.1 Miller, Capt. J. Doe, C.O.1 J. Doe and C.O.1 J. Doe jointly and severally for compensatory and punitive damages along with interest, cost of this suit, and such other relief as this Honorable Court may deem just.

End Of Complaint

[Continue On Next Page]

As the plaintiff in this case and a pro se Litigant,

The facts set forth in this complaint are true and correct to the best of my Knowledge, information and belief. This statement is made subject to the penalties of Pa. C.S. § 4904.

/s/ David Iverson

Jury Trial Demanded

Executed at SCI @ Benner Township on this 19th day of April 2021.

By: /s/ David Iverson   (Pro se Attorney)

David Iverson # Ge-2064

SCI @ Benner Township

301 Institution Drive

Bellefonte, Pa. 16823

Exhibit-1
Page-1



**Reading Hospital**
TOWER HEALTH
Advancing Health, Transforming Lives.

# AFTER VISIT SUMMARY

**David Iverson**   MRN: 4821009     📅 5/24/2019   📍 Reading Hospital Emergency Department 484-628-3637

## Instructions

Your personalized instructions can be found at the end of this document.

 **Read the attached information**
Hydrocele Surgery (Hydrocelectomy) (English)

 **Follow up with Your Primary Care Provider**

## What's Next

You currently have no upcoming appointments scheduled.

## 📝 Important Information

Continue to take all medicines prescribed by your doctor. If you feel worse after going home call your doctor or return to the Emergency Department.

Compliments, Comments or Questions

If you have any compliments, comments or questions about the care you received please call us at 484-628-8663 and a Patient Advocate will assist you.

In the next few weeks you may receive a patient survey about the care you received. We hope that you will take a few moments to complete the survey and return it.
Thank you for letting us be a partner in your care.

To schedule your imaging test or procedure call 484-628-8611.

## Today's Visit

You were seen by CHAD ROARABAUGH, PA-C

**Reason for Visit**
• Anorexia
• Alleged Sexual Assault

**Diagnosis**
Hydrocele in adult

## 🔬 Lab Tests Completed
CBC with Auto Diff
CBC with differential
Comprehensive metabolic panel

## 🔲 Imaging Tests
US Pelvis Scrotum / Doppler
XR Shoulder Lt Routine 2 Vws Or More

## MyChart Information

Send messages to your doctor, view your test results, renew your prescriptions, schedule appointments and more! Go to https://www.mytowerhealth.org/mytowerhealth/
  Click **Sign Up Now** and enter personal activation code: FNPG5-SS9SX-5PW5H
  Expires: 7/23/2019  8:28 PM
Questions: call MyTowerHealth help desk at 484-628-6924 Mon-Fri 8 a.m.- 5:30 p.m.

Exhibit-1
Page 2

## 🖹 Important Information (continued)

Follow up with your family doctor as directed. If no appointment has been scheduled, call your family doctor to schedule a visit within 1-2 weeks. If you are in need of a family doctor, contact the Reading Hospital referral line by calling 484-628-HELP (4357).

In case of emergency call 911.

Do you need help with medical bills? Call 484-628-5683 to speak with a person who can help.

## Changes to Your Medication List
You have not been prescribed any medications.

*Exhibit-1*
*Page-3*

# Instructions
The Reading Health System's Emergency Department

INSTRUCTIONS FOLLOWING A SEXUAL ASSAULT

You have had an exam today because of a sexual assault. The purpose of this exam is to: Find out if you have any injuries that need treatment, Offer treatment to prevent gonorrhea and chlamydia infections (common sexually transmitted diseases), Offer treatment to prevent pregnancy, Collect specimens (which will be turned over to the law enforcement agency if you have given permission for this to happen), Answer any questions that you might have.

After a sexual assault, it is normal to have many strong and unexpected feelings. Shock, embarrassment, fear, depression, blame, guilt, shame, and anger are all very common and normal feelings. There may also be: General sense of anxiety and fear,
Recurring thoughts and nightmares, Trouble sleeping or changes in appetite, Feeling depressed, sad, or low in energy, Irritable or easily upset, Feeling the need to avoid activities, places or people that remind you of the event.

These are normal reactions and usually go away within a few days or a few weeks.
If, when you get home and read these instructions, you have any questions; please contact us at 484-628-3635. Ask for the SANE Nurse.

Follow-Up Care

We strongly encourage you to get counseling as soon as possible after the assault. Contact a private counselor, or make an appointment with a counselor at Berks Women In Crisis by calling 610-372-9540.

Home Care
For the next few days, you may prefer to stay with family or friend. This will help give you emotional support and a sense of physical safety. Sexual assault is a crime of violence. Remember that it was NOT YOUR FAULT. A sexual assault can affect your self-esteem. It can also affect relationships with partners, family members and friends. Talking with a counselor who understands these issues may be helpful to you. Sometimes, months or years after the assault, feelings may come to the surface again. Counseling or a support group can be helpful at these times too.

You may be able to receive compensation for medical costs or losses that relate to the sexual assault. Talk to your counselor or the local law enforcement agency for details.

Resources
· Berks Women in Crisis.........................................610-372-9540
for counseling and other support services
· Co-County Wellness Services...............................610-375-6523
for anonymous HIV testing and counseling
· Planned Parenthood of Northeast Pennsylvania.........610-376-8061
for testing for sexually transmitted diseases
· The Reading Hospital HelpLine.............................484-628-HELP
to find a private gynecologist or counselor, or to connect to area support groups
· The Reading Hospital Emergency Department............484-628-EMER (3637)
if you have any questions about this discharge information or the care you
received following the assault..

Exhibit-1
Page 4

◎ Attached Information

Hydrocele Surgery (Hydrocelectomy) (English)

# Hydrocele Surgery (Hydrocelectomy)



A hydrocele is a sac of fluid that forms around a testicle. It occurs when fluid builds up in the layer of tissue that covers the testicle. It may be caused by an infection or by injury to the testicle. But the cause is often not known. A large hydrocele can cause pain or swelling in the scrotum. Hydrocelectomy is surgery to remove the hydrocele.

## Preparing for surgery

Prepare for the surgery as you have been told. In addition:

- Tell your doctor about all medicines you take. This includes both prescription and over-the-counter medicines. This also includes herbs and other supplements. It also includes any blood thinners, such as warfarin, clopidogrel, or daily aspirin. You may need to stop taking some or all of them before surgery as instructed by your doctor.
- Follow any directions you are given for not eating or drinking before surgery.

## The day of surgery

The procedure takes about 30 minutes. You will likely go home on the same day.

## Before the surgery starts

- An IV (intravenous) line is put into a vein in your arm or hand. This line delivers fluids and  medicine  (such as antibiotics).
- You are then given medicine (anesthesia) to keep you free of pain during the surgery. This may be general anesthesia, which puts you in a state like deep sleep through the surgery. A tube may be put into your throat to help you breathe.
- Local anesthesia or numbing medicine may be given to help control post-surgery pain. The doctor or anesthesiologist can tell you more.

Exhibit-1
Page-5

## During the surgery

- An incision is made in the scrotum.
- The hydrocele is drained of fluid. The tissue that forms the sac around the hydrocele is removed or repositioned. This helps prevent fluid from building up again.
- A thin tube (drain) may be placed in the incision to allow fluid to drain.
- The incision in the scrotum is closed with stitches or surgical strips.

## After the surgery

You will be taken to a room to recover from the anesthesia. A nurse will monitor you and make sure you're not in pain. You may feel sleepy and nauseated. If a breathing tube was used, your throat may be sore at first. An ice pack may be put on the surgical area. This helps reduce swelling. You may also be given a jockstrap to wear. This helps relieve pain and swelling, and prevents injury. Once you are ready to go home, have an adult family member or friend drive you.

## Recovering at home

Follow the instructions you have been given to care for yourself. During your recovery:

- Apply an ice pack or cold compress to the scrotum as directed to help reduce swelling. Do this for no longer than 15 minutes at a time. Continue using the cold pack for 2 days or until swelling improves.
- Take prescribed pain medicine as directed.
- Care for your incision as instructed.
- Follow your doctor's guidelines for showering. Avoid swimming, bathing, using a hot tub, and other activities that cause the incision to be covered with water until your doctor says it's OK.
- Wear a jockstrap or snug underwear as directed.
- Don't lift anything heavy. Exercise as directed.
- Don't have sex for 4 weeks, or as directed.
- Don't drive until you are no longer taking pain medicine and your doctor says it's OK.

## When to call your healthcare provider

Call your healthcare provider if you have any of the following:

- Chest pain or trouble breathing (call 911)
- Fever of 100.4°F (38°C) or higher, or as directed by your healthcare provider
- Symptoms of infection at the incision site such as increased redness or swelling, warmth, worsening pain, or foul-smelling drainage
- Bleeding from the incision site
- Pain gets worse or is not relieved by pain medicine
- Increased pain or swelling in the scrotum or groin area

## Follow-up care

You will have follow-up visits with your doctor to check on your healing. You may also have stitches or a surgical drain that needs to be removed. Be sure to tell your doctor if you have any questions or concerns about your recovery.

## Risks and possible complications

- Bleeding
- Infection
- Blood clots
- Recurrence of the hydrocele

Exhibit-1
Page-6

- Injury to the testicle and nearby structures, which can lead to infertility
- Risks of anesthesia. The anesthesiologist will discuss these with you.

**Date Last Reviewed:** 8/1/2017

© 2000-2017 The StayWell Company, LLC. 800 Township Line Road, Yardley, PA 19067. All rights reserved. This information is not intended as a substitute for professional medical care. Always follow your healthcare professional's instructions.

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID IVERSON,
    Plaintiff,

        CIVIL ACTION No. 4:20-cv-1269

   V.

        Magistrate Judge, W.I. ARBUCKLE

Lt. Reese, et al,
    Defendants.

CERTIFICATE OF SERVICE

    I, David Iverson (pro se), hereby certify that on this 19th day of April 2021, a true and correct copy of the herein Motion For Leave to File an Amended Complaint and Amended Complaint was filed with this court and served upon the below address, via, first class mail:

To: Office of Attorney General
     Attn: Jonathan M. Blace
     15th Floor, Strawberry Square
     Harrisburg, Pa. 17120

                        Respectfully

4-19-21                /s/ David Iverson

                David Iverson#Ge-2064
                SCI@Benner Township
                301 Institution Drive
                Belletonte, Pa. 16823

David Iverson # Ge-2064
SCI-Benner
301 Institution Drive
Bellefonte, Pa. 16823

RECEIVED
SCRANTON

APR 2 2 2021

PER _____
DEPUTY CLERK

Unite
Middl
Willia
235
P.O. B
Scran